UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DOMONIQUE HOLMES and
RONALD HOLMES,

    Plaintiffs,

vs.                        Case No.:

ALLIANCE CAS, LLC,

    Defendant.
_____/

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
AND DEMAND FOR JURY TRIAL**

**I.    INTRODUCTION**

1.    This is an action for injunctive relief and damages and demand for jury trial brought by Plaintiffs, DOMONIQUE HOLMES and RONALD HOLMES, individual consumers, for violations of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), by ALLIANCE CAS, LLC ("ALLIANCE"). Fundamentally, this case is about the Defendant's refusal to respect the Plaintiffs' personal and legal rights in the Defendant's attempts to collect a debt from Plaintiffs.

## II.  JURISDICTION AND VENUE

2. Jurisdiction of this Court arises pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337.  Supplemental jurisdiction exists for the state law FCCPA claims pursuant to 28 U.S.C. § 1367.

## III.  PARTIES

3. Plaintiff, DOMONIQUE HOLMES, is a natural person, and citizen of the State of Florida, residing in Crestview, Florida.  Ms. Holmes is a "consumer" as defined by the FCCPA, Fla. Stat. § 559.55(8) and 15 U.S.C. § 1692a(3).

4. Plaintiff, RONALD HOLMES, is a natural person, and citizen of the State of Florida, residing in Crestview, Florida.  Mr. Holmes is a "consumer" as defined by the FCCPA, Fla. Stat. § 559.55(8) and 15 U.S.C. § 1692a(3).

5. Defendant, ALLIANCE, whose principal address is located at 2200 North Commerce Parkway, Suite 200, Weston, FL 33326, regularly collects, or attempts to collect, debts on behalf of others, and is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

6. ALLIANCE is registered as "consumer collection agency" with the Florida Office of Financial Regulation.

7. Upon information and belief, ALLIANCE specializes in the collection of unpaid assessments for community associations including, but not limited to, Brooke Estates Homeowners Association, Inc. (the "HOA").

## IV. BACKGROUND

8. In or around July 2018 the Holmes moved into the HOA, purchasing a single-family home located at 3020 Crown Creek Circle, Crestview, FL 32539 (the "Holmes Residence").

9. Since purchasing the Holmes Residence, the Plaintiffs have maintained it as their usual place of residence and abode.

10. At all times material hereto, the Holmes Residence was subject to the Declarations of Covenants, Conditions and Restrictions for Brook Estates – Phase 1 (the "Declarations"). A true and correct copy of the Declarations is attached hereto as Exhibit 1.

11. The HOA charges annual assessment fees (the "HOA Fees") for homeowners such as the Plaintiffs.

12. The HOA Fees are generally extremely modest -- $264.00 for the 2022 annual assessment and $275.00 for the 2023 annual assessment, for example.

13. Inadvertently, the Plaintiffs failed to pay the 2022 and 2023 annual assessments, resulting in a balance of $539.00 needing to be paid.

14. The Plaintiffs received a statement dated April 25, 2023, from the HOA demanding payment in the amount of $610.19, which consisted of the 2022 and 2023 annual assessments, and finance charges for the 2022 and 2023 assessments being

overdue. A true and correct copy of the April 25, 2023, statement is attached hereto as Exhibit 2.

15. The HOA sent the Plaintiffs a "Notice of Late Assessment" dated May 22, 2023, demanding payment of $620.19, which consisted of the $539.00 for the 2022 and 2023 assessments, and interest in the amount of $81.19. A true and correct copy of the May 22, 2023, notice of late assessment is attached hereto as Exhibit 3.

16. The notice of late assessment gave the Plaintiffs 30 days, or by and through June 21, 2023, to submit payment.

17. The Plaintiffs did not make a payment before June 21, 2023.

18. In July 2023 Ms. Holmes contacted the HOA via telephone and was informed by the HOA that the current balance owed by the Plaintiffs was $634.38.

19. On July 17, 2023, the Plaintiffs made a payment of $634.38, which is what the Plaintiffs believed their balance to be. A true and correct copy of the Plaintiffs' check in the amount of $634.38 is attached hereto as Exhibit 4.

20. Upon information and belief, the HOA is party to an agreement or contract with ALLIANCE whereby the HOA retained ALLIANCE for the purpose of collecting monies for the HOA Fees on the Holmes Residence.

21. The agreement or contract between the HOA and ALLIANCE is in the exclusive possession of the HOA and ALLIANCE.

22. Around the same time that the Plaintiffs made the $634.38 payment they received a letter from ALLIANCE dated June 30, 2023, stating that the new balance owed by the Plaintiffs for the HOA fees for 2022 and 2023 was $930.15. A true and correct copy of the June 30, 2023, letter is attached hereto as Exhibit 5.

23. The June 30, 2023, letter stated, *inter alia*, that the Plaintiffs had been charged $299.00 in "collection fees."

24. Subsequently, the check for $634.38 was cashed by ALLIANCE on August 4, 2023.

25. The Plaintiffs then received a letter from ALLIANCE dated August 14, 2023, (the "Intent to Lien Letter") which stated, *inter alia*, that the HOA intended on recording a claim of lien on the Holmes Residence if the Plaintiffs did not pay $505.73. A true and correct copy of the August 14, 2023, letter is attached hereto as Exhibit 6.

26. The Plaintiffs, not sure why the account had been sent to collections after making the payment as required by the HOA, sent the HOA and ALLIANCE an e-mail dated October 24, 2023, disputing the amount that ALLIANCE was attempting to collect. A true and correct copy of the content of the October 24, 2023, e-mail is attached hereto as Exhibit 7.

27. On October 25, 2023, ALLIANCE sent the Plaintiffs an e-mail with a "Statement of Account Summary" (the "October 25 Summary") attached. A true and

correct copy of the October 25, 2023, e-mail and October 25 Summary are attached hereto as Exhibits 8 and 9, respectively.

28. The October 25 Summary stated, *inter alia*, that the Plaintiffs owed the following amounts:

| AMOUNT DUE NOW | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Assessments Through: | | October 23, 2023 | | | $204.22 |
| | | | | ACAS Collection Costs | | | $35.44 |
| | | | | ACAS Collection Fees | | | $1,265.00 |
| | | | | HOA Interest | | | $109.75 |
| | | | | TOTAL DUE NOW: | | | $1,614.41 |
| Date | Inv # | Description | ACAS Collection Costs | ACAS Collection Fees | HOA Assessments | HOA Interest | Row Total | Cumulative Total |
| 1/1/22 | 9395939 | Assessment - January 2022 | | | 264.00 | | $264.00 | $264.00 |
| 1/1/23 | 9395940 | Assessment - January 2023 | | | 275.00 | | $275.00 | $539.00 |
| 6/30/23 | 9701352 | Collection Placement | | 162.00 | | | $162.00 | $701.00 |
| 6/30/23 | 9701353 | Initial Letter | | 137.00 | | | $137.00 | $838.00 |
| 6/30/23 | 9701354 | Fdcpa Collection Placement Notice | 0.60 | | | | $0.60 | $838.60 |
| 8/3/23 | 9987916 | chk #995331* | -0.60 | -299.00 | | -334.78 | ($634.38) | $204.22 |
| 8/4/23 | 9965126 | Administrative and Monitoring | | 55.00 | | | $55.00 | $259.22 |
| 8/14/23 | 10029832 | Intent to Lien Letter | | 137.00 | | | $137.00 | $396.22 |
| 8/14/23 | 10029835 | Intent to Lien Letter | 7.81 | | | | $7.81 | $404.03 |
| 8/29/23 | 10097558 | Recovery Operations Center | | 82.00 | | | $82.00 | $486.03 |
| 9/4/23 | 10129847 | Administrative and Monitoring | | 55.00 | | | $55.00 | $541.03 |
| 9/29/23 | 10277937 | Recovery Operations Center | | 82.00 | | | $82.00 | $623.03 |
| 10/4/23 | 10305724 | Administrative and Monitoring | | 55.00 | | | $55.00 | $678.03 |
| 10/17/23 | 10473214 | Lien Recording Costs | 13.50 | | | | $13.50 | $691.53 |
| 10/17/23 | 10473215 | Advancing of Lien and Recording | | 497.00 | | | $497.00 | $1,188.53 |
| 10/17/23 | 10473216 | Lien Release Recording Cost | 13.50 | | | | $13.50 | $1,202.03 |
| 10/17/23 | 10473217 | Lien Release Processing Fee | | 165.00 | | | $165.00 | $1,367.03 |
| 10/19/23 | 10489100 | Notice of Lien Letter | | 137.00 | | | $137.00 | $1,504.03 |
| 10/19/23 | 10489102 | Notice of Lien Letter | 0.63 | | | | $0.63 | $1,504.66 |
| 10/25/23 | -99 | TOTAL HOA INTEREST DUE THROUGH Oct 25, 2023: | | | | 109.75 | $109.75 | $1,614.41 |
| TOTAL | | | $35.44 | $1,265.00 | $204.22 | $109.75 | $1,614.41 | $1,614.41 |

29. ALLIANCE, as of October 23, 2023, was attempting to collect $162.00 for "collection placement," $137.00 for an "initial letter," $165.00 for "administrative and monitoring" fees, and $164.00 for "recovery operations center."

30. ALLIANCE also was attempting to collect "Lien Recording Cost," Lien Release Recording Costs," "Lien Release Processing Fee," and "Notice of Intent to Lien Letter."

31. According to the October 25 Summary, ALLIANCE apparently retained an attorney, Jared Block, Esq. ("Attorney Block") for the purpose of recording a lien against the Holmes Residence.

32. On or about October 18, 2023, Attorney Block recorded or caused to be recorded a Claim of Lien against the Holmes Residence (the "POA Lien"). A true and correct copy of the POA Lien is attached hereto as Exhibit 9.

33. Despite the requirements of Florida law, the POA Lien was never served by Attorney Block on the Plaintiffs.

34. In fact, the Plaintiffs only found out about the POA Lien when the Plaintiffs mortgagee contacted them about the POA Lien being filed.

35. Upon information and belief, ALLIANCE instructed Attorney Block to refrain from serving the POA Lien to avoid the disclosure to the Plaintiffs that the Claim of Lien was only $204.22 as reflected in the POA Lien as opposed to the inflated and bogus amount claimed by ALLIANCE.

36. By this artifice and scheme, ALLIANCE can also avoid the consequence of filing a patently fraudulent lien in the public record.

37. ALLIANCE uses liens such as the POA Lien to extort the full payment of all the bogus fees and charges from homeowners like the Plaintiffs when they attempt to settle their debts to the HOA.

38. In fact, that is precisely what occurred in this case. The Plaintiffs, upon learning of the POA Lien, and terrified of not only the potential foreclosure on the POA Lien and of the prospect of potential credit reporting of the balance listed in the October 25 Summary as it would possibly jeopardize their military clearance, and thus their careers, paid ALLIANCE $1,614.41 on or about October 27, 2023.

39. ALLIANCE was not authorized to recover any of these amounts under the Declarations for Florida Law.

40. On or about November 16, 2023, Attorney Block recorded or caused to be recorded a Satisfaction of Lien. A true and correct copy of the Satisfaction of Lien is attached hereto as Exhibit 11.

41. Attorney Block did provide a copy of the Satisfaction of Lien to the Plaintiffs, as it showed the payment of $1,614.41 which the Plaintiffs made, and not the $204.22 detailed on the POA Lien, which would have clued the Plaintiffs in to the fact that these charges were all bogus.

42. Upon information and belief, ALLIANCE does not charge homeowners and condominium associations directly, and those homeowners and condominium

associations were unaware of the collection fees and charges which ALLIANCE was attempting to collect from persons such as the Plaintiffs.

43. ALLIANCE's attempts, and success, at charging these bogus collection fees from homeowners is done with the knowledge that the homeowners will fear grave consequences if they don't pay.

44. The Plaintiffs were fearful not only that a foreclosure might take place if they didn't pay, but also that they might lose their military security clearances, and thus damage their careers.

45. ALLIANCE's extortion attempts have caused the Plaintiffs great stress, anxiety, loss of sleep, and emotional distress, not to mention the loss of the $1,614.41 in actual money they paid towards this nefarious scheme.

## V.     COUNT I – FLORIDA CONSUMER COLLECTION PRACTICES ACT VIOLATIONS BY ALLIANCE

46. Plaintiffs incorporate by reference paragraphs 1 through 45 of this Complaint.

47. By continuing to collect debt which the HOLMES informed ALLIANCE the HOLMES didn't owe, by threatening to record a claim of lien, and recording said lien, on the Holmes Residence based on bogus, illegal collection fees, and by engaging in the debt collection activity described above, ALLIANCE engaged in collection activity ALLIANCE could reasonably expect to abuse or harass the Plaintiffs in violation of the FCCPA, Fla. Stat. § 559.72(7).

48. ALLIANCE claimed, attempted, or threatened to enforce a debt ALLIANCE knew as not legitimate and asserted the existence of a legal right when ALLIANCE knew that right did not exist in violation of the FCCPA, Fla. Stat. § 559.72(9).

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendant, ALLIANCE, for:

    a.    Actual and statutory damages pursuant to Fla. Stat. § 559.77;

    b.    Attorney's fees, litigation expenses and costs of suit pursuant to Fla. Stat. § 559.77;

    c.    Injunctive relief pursuant to Fla. Stat. § 559.77; and

    d.    Such other and further relief as the Court deems proper.

### VI.  COUNT II – FAIR DEBT COLLECTION PRACTICES ACT VIOLATIONS BY ALLIANCE

49. Plaintiffs incorporate by reference paragraphs 1 through 45 of this Complaint.

50. As more particularly described above, Defendant violated the FDCPA in that Defendant:

    a. engaged in conduct the natural consequence of which is to harass, oppress or abuse any person with the collection of a debt in contravention of 15 U.S.C. § 1692d;

    b. made a false, deceptive, or misleading representation or means in connection with the collection of a debt in contravention of 15 U.S.C. § 1692e;

    c. made a false representation of the character, amount or legal status of any debt in contravention of 15 U.S.C. § 1692e(2)(A);

    d. made a false representation of the services rendered or compensation which may be lawfully received by Defendant as a debt collector in contravention of 15 U.S.C. § 1692e(2)(B);

    e. used any false representation or deceptive means to attempt to collect a debt in contravention of 15 U.S.C. § 1692e(10);

    f. Used unfair and unconscionable means to collect, or attempt to collect, a debt in contravention of 15 U.S.C. § 1692f; and

    g. the collection of any amount (including any interest, fee, charge or expense) incidental to the principal obligation unless such amount is expressly authorized by the agreement creating the debt or permitted by law in contravention of 15 U.S.C. § 1692f(1).

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendant, ALLIANCE, for:

    d.    Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

e. Attorney's fees, litigation expenses and costs of suit pursuant to 15 U.S.C. § 1692k; and

d. Such other and further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

/s/ Ryan G. Moore
Ryan G. Moore, Fla. Bar No.: 70038
First Coast Consumer Law
476 Osceola Avenue
Jacksonville Beach, FL 32250-4082
P: (904) 242-7070 F: (904) 513-9280
e-service: pleadings@firstcoastconsumerlaw.com
*Attorney for Plaintiff*